■ GEORGE ARMOUR et al., Appellants, v JOSEPH MARINO et al., Respondents, et al., Defendants.—Kane, J. P.

In 1924, Harry J. Ferguson decided to subdivide certain lake front property he owned in Otsego County into 36 lots. He hired defendant Vito N. Molinari, a land surveyor, to prepare the proposed subdivision map. The map designated a right-of-way intended by Ferguson for the prospective lot purchasers' common use. Four of the lots were conveyed to Molinari and five of the lots were conveyed to Thomas and Marie Kalligan. Each such conveyance granted a right-of-way over a 15-foot strip of land to be used in common with other lot owners, on the express condition that all gates and bars across the same shall be kept closed. Thereafter, in 1949, Ferguson's successor in title, Robert J. Wilson, conveyed a lot to defendant Mahlon Olmstead which omitted specific reference to the 15-foot strip but did state, "Together with the appurtenances and all the estate and rights of the party of the first part in and to said premises." In 1961, plaintiffs acquired the Kalligans' property by inheritance. Defendant Calabro & Hill Properties, Inc., Wilson's successor, who owned the remaining lands of the common grantor, resubdivided its lands. Thereafter, Calabro & Hill conveyed a lot to Molinari and a lot to defendants Joseph, Mary and Rudolph Marino. Included in the parcel to the Marinos was the 15-foot strip as a right-of-way for ingress and egress to the lots.

The 15-foot strip was never used to gain access to lots east

of plaintiffs' lands until 1984, when the Marinos attempted to use the right-of-way. Plaintiffs had, however, cultivated and fenced the 15-foot strip and refused to permit the Marinos to use the right-of-way. The Marinos then hired a bulldozer to cut a 15-foot path through plaintiffs' garden and trees. As a result, plaintiffs commenced the instant suit. In their complaint, plaintiffs allege, in their first cause of action, that they acquired title to the portion of the 15-foot strip bordering their lots by adverse possession for more than 10 years, commencing in 1961. The Marinos then brought a motion for partial summary judgment, which motion was granted by Supreme Court to the extent of dismissing the first cause of action. This appeal by plaintiffs ensued.

Supreme Court's decision should be affirmed. For a party to successfully assert title to property by way of adverse possession, the possession must be actual, hostile, under a claim of right, open, notorious, exclusive and continuous (*Castle Assocs. v Schwartz*, 63 AD2d 481). Moreover, in a case such as the instant situation, where an easement has been created by grant but has not been used, even if an owner of the servient tenement has obstructed the easement, this does not necessarily establish adverse possession. Such a use will not be deemed adverse "until (1) such time as the need for the right of way arises, (2) a demand is made by the easement owner that the way be opened, and (3) the servient tenant refuses" (*Filby v Brooks*, 105 AD2d 826, 828, *affd* 66 NY2d 640). These requirements have simply not been satisfied in this case. Here, the right-of-way was not sought to be used until 1983, when the Marinos became lot owners and demanded that it be opened. Plaintiffs have further offered no support for their assertion that in 1972 they informed Olmstead that he could not use the right-of-way. Additionally, insofar as plaintiffs' maintenance of a fence is concerned, the fencing was constructed at the time of the grant of the easement with the right-of-way remaining available on the condition that the gates be kept closed. Therefore, this fails to support plaintiffs' claim of adverse possession. Thus, in our view, Supreme Court correctly concluded that plaintiffs could not, as a matter of law, prevail on the issue of adverse possession. Accordingly, the court properly dismissed the first cause of action.

Order affirmed, without costs. Kane, J. P., Weiss and Harvey, JJ., concur.

Yesawich, Jr., J., dissents and votes to modify in a memorandum. Yesawich, Jr., J. (dissenting). I respectfully dissent. Summary judgment has been awarded on the assumption that

the Marinos have an easement along a 15-foot strip of land, title to which is in their name, abutting the northern border of plaintiffs' premises (hereinafter the disputed tract).* Any such easement is a conceptual illusion for "a person cannot have an easement over his own property" (2 Warren's Weed, New York Real Property, Easements, § 6.05, at 44 [4th ed]). Not only is such an easement unnecessary *(see, Hurd v Lis,* 92 AD2d 653, 654, *appeal dismissed* 70 NY2d 872), but acknowledging its existence does violence to the merger doctrine which discreates easements when the dominant and servient estates are vested in one owner (49 NY Jur 2d, Easements, § 180).

The cases of *Castle Assocs. v Schwartz* (63 AD2d 481) and *Filby v Brooks* (105 AD2d 826, *affd* 66 NY2d 640) protect dominant tenants from the loss of an unused easement to the servient tenant and are simply inapplicable to the facts at hand. Here, the dominant tenant, plaintiffs, claim they have adversely possessed the fee of the servient tenant, the Marinos' predecessors in interest. Thus the principles pertaining to adverse possession of a fee, not adverse possession of an easement, should apply. Surely adversely possessing a fee minus an easement (the Marinos' estate if Olmstead does indeed still possess an easement over the disputed tract) should not be more difficult of accomplishment than adversely possessing a fee simple.

Moreover, this case is notably different from the authorities relied upon by my colleagues in that, even accepting the novel concept necessarily implied in their decision that an easement benefiting the Marinos over their own land can exist, that easement was not granted until 1983, long after the alleged ripening of plaintiffs' adverse possession claim; the latter maintain they cultivated and also partially fenced in the disputed tract, to the extent it abuts their lots, in 1961. Nor can the Marinos count on the easement the Fergusons planned to bestow, but did not, on lots east of plaintiffs', for their subdivision map was not filed until after the asserted vesting of plaintiffs' title by adverse possession *(see,* 5 Warren's Weed, New York Real Property, Streets & Highways, § 4.05, at

---

* Whether Olmstead has or had an easement over the disputed tract is academic for he has defaulted in this action. Even if relevant, Olmstead's ostensible easement cannot be the basis for granting summary judgment as the fact question of whether he has abandoned his easement is unresolved by the record before us. And Molinari's easement, which was granted by the Fergusons, Molinari's and the Marinos' predecessors in interest, is irrelevant since his right of ingress and egress is over a roadway "to and from" his premises and does not even extend to the disputed tract.

27; *cf., O'Hara v Wallace,* 83 Misc 2d 383, 387, *mod* 52 AD2d 622). Furthermore, the Marinos' lot is not one set out in the Fergusons' proposed subdivision, but rather a radically different lot with ingress and egress to it independent of the easement as contemplated by the Fergusons *(see, Levine v Young,* 104 NYS2d 1004, 1008-1009).

In my view, resolution of the factual issue of whether plaintiffs adversely possessed the disputed tract is a prerequisite to the disposition of this case. And since that issue cannot be determined on this record, summary judgment as to the first cause of action should have been denied.